IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TRACEY L. B.,[1]
    Plaintiff,

v.                                                         Civil No. 3:20-cv-00308 (HEH)

KILOLO KIJAKAZI,[2]
Acting Commissioner of Social Security,
    Defendant.

## REPORT AND RECOMMENDATION

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act").

Tracey L. B. ("Plaintiff"), forty-three years old at the time of this Report and Recommendation, received DIB from June 25, 2005 until July 1, 2016, when an Administrative Law Judge ("ALJ") found her medically improved as of April 28, 2015. (R. at 44.) Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). In her petition, Plaintiff argues that the ALJ erred in evaluating Plaintiff's residual functional capacity ("RFC") by: (1) finding that Plaintiff's fibromyalgia was non-severe and failing to adequately account for fibromyalgia; (2) finding that Plaintiff's headaches and/or migraines were non-severe and failing to adequately account for headaches or migraines; (3) failing to account for the Plaintiff's

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kijakazi should be substituted as the defendant in this suit.

limitations in concentration, persistence, and pace; and (4) conducting an improper *Craig* analysis. (Mem. In Supp. of Pl.'s Mot. for Summ. J. at 6-7, 9-10, 11-12, 13, ECF No. 22 ("Pl.'s Mem.").)

This matter is ripe for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) following the parties' cross motions for summary judgment.[3] For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 20) and Motion to Remand (ECF No. 21) be DENIED; that Defendant's Motion for Summary Judgment (ECF No. 24) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I.  PROCEDURAL HISTORY

On July 7, 2003, Plaintiff applied for DIB and SSI payments pursuant to Title II and Title XVI of the Act, alleging disability due to a combination of physical and mental impairments. (R. at 128.) The Social Security Administration ("SSA") denied both claims and Plaintiff requested a hearing for reconsideration on April 12, 2004. (R. at 128.) On June 24, 2005, an ALJ granted Plaintiff's application and found Plaintiff disabled under the Act as of June 26, 2003. (R. at 131.) On June 3, 2016, the SSA informed Plaintiff that her disability ceased as of April 2015 because her medical condition improved. (R. at 174-175.) Plaintiff filed a request for a hearing, which occurred on March 28, 2017. (R. at 142.) On September 28, 2017, an ALJ determined that Plaintiff's medical condition improved and rendered her not disabled as of April 2015 through the date of his decision. (R. at 146, 156, 174.)

Plaintiff appealed the September 28, 2017, decision and the Appeals Council granted Plaintiff's request for review. (R. at 164, 232.) The Appeals Council vacated and remanded the

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

case to the ALJ on September 6, 2018. (R. at 164-65.) On May 9, 2019, Plaintiff testified at a hearing regarding the cessation of her benefits. (R. at 15.) On June 25, 2019, the ALJ again found Plaintiff not disabled as of April 28, 2015, concluding Plaintiff could perform work existing in significant numbers in the national economy. (R. at 29-30.) On March 4, 2020, the Appeals Council denied Plaintiff's request for review and rendered the ALJ's decision final, subject to review by this Court. (R. at 1-3.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's disability determination "when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner

3

based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).

The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

An eight-step sequential evaluation of a claimant's work and medical history is required to determine if a claimant continues to be disabled under the Act. 20 C.F.R. § 404.1594(f). An ALJ conducts the analysis for the Commissioner, and a court must examine that process on appeal to determine whether the ALJ applied the correct legal standards and whether substantial evidence in the record supports the resulting decision of the Commissioner. *Guiton v. Colvin*, 546 Fed. Appx. 137, 140-141 (4th Cir. 2013) (unpublished). The claimant bears the proof of burden in the process, except at the last of the eight steps. *See id*. at 141.

At step one, the ALJ must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If the claimant is performing substantial gainful activity and any applicable trial work period has been completed, the claimant is no longer disabled. *See id*. At step two, the ALJ must determine whether the claimant's impairments meet or equal the severity of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix I, rendering their impairments severe. *See* 20 C.F.R. § 404.1594(f)(2). At step three, the ALJ must determine whether medical improvement has occurred. *See* 20 C.F.R. § 404.1594(f)(3). At step four, the ALJ must determine whether the medical improvement is related to the claimant's ability to work. *See*

20 C.F.R. § 404.1594(f)(4). If medical improvement is not related to the claimant's ability to work, the analysis proceeds to step five, but if medical improvement is related to the claimant's ability to work, the analysis skips to the sixth step. *See id*.

At step five, the ALJ must determine whether an exception to medical improvement applies. *See* 20 C.F.R. § 404.1594(f)(5). If no exception applies, the claimant's disability continues. *See id*. At step six, the ALJ must determine whether all the claimant's current impairments in combination are severe. *See* 20 C.F.R. § 404.1594(f)(6). If the impairments are not severe, the claimant is no longer disabled. If the impairments are severe, then the analysis proceeds to the next step. At step seven, the ALJ must determine whether the claimant has the RFC to perform any of their past relevant work. *See* 20 C.F.R. § 404.1594(f)(7). At step eight, if the claimant is unable to engage in work performed in the past, the ALJ must determine whether the claimant can perform other work existing in the national economy. *See* 20 C.F.R. § 404.1594(f)(8).

### III. THE ALJ'S DECISION

On May 9, 2019, the ALJ held a hearing during which Plaintiff and a vocational expert testified. (R. at 41-67.) On June 25, 2019, the ALJ issued a written decision, finding that Plaintiff was not disabled under the Act. (R. at 12-30.) The ALJ followed the eight-step process for determining whether an individual is entitled to continued DIB. (R. at 16-30.)

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity through April 28, 2015, the date that Plaintiff's disability ended. (R. at 19.) At the time of the June 24, 2005 decision, Plaintiff had the following medically determinable impairments: major depression and pituitary prolactinoma. (R. at 17.) At step two, the ALJ determined that since April 28, 2015, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix

1. (R. at 20.) At step three, the ALJ determined that medical improvement occurred as of April 28, 2015. (R. at 17-19.) At step four, the ALJ concluded that the medical improvement was related to the ability to work because, as of April 28, 2015, Plaintiff's disability no longer met or medically equaled the same listing that was met in June 2005. (R. at 19-20.) The ALJ skipped step five, because Plaintiff's medical improvement was related to Plaintiff's ability to work. (R. at 16, 19.)

At step six, the ALJ determined that Plaintiff continued to have severe impairments that caused more than minimal limitations in Plaintiff's ability to perform basic work activities. (R. at 19-20.) The ALJ determined that Plaintiff had the following determinable impairments from April 28, 2015 through June 25, 2019: history of benign pituitary tumor, obesity, depression, degenerative disk disease, anxiety, neurocognitive disorder, and post-traumatic stress disorder ("PTSD"). (R. at 19.)

At step seven, the ALJ determined that Plaintiff's impairments at the time of the June 24, 2005 decision decreased in medical severity and afforded her the RFC to perform sedentary work with simple, routine tasks. (R. at 19.) The ALJ found that Plaintiff could stand and walk three hours in total a workday; lift and carry five pounds frequently and ten pounds occasionally. (R. at 22.) Additionally, the ALJ determined that Plaintiff needed a ten-minute break every two hours and a sit/stand option for two minutes in place every hour. (R. at 22.) The ALJ also determined that Plaintiff would be off-task eleven percent of the time during the workday and miss twelve days of work per year. (R. at 29.)

At step eight, the ALJ determined Plaintiff was able to perform a significant number of jobs in the national economy, considering her age, education, work experience, and RFC. (R. at 28-29.) The ALJ concluded that Plaintiff's disability ended as of April 28, 2015, and she has not

become disabled since that time. (R. at 29.) Therefore, Plaintiff is not entitled to reinstatement of DIB. (R. at 29.)

## IV. ANALYSIS

For the reasons set forth below, the Court concludes that the ALJ did not err in his determination that: (1) Plaintiff's disability ended on April 28, 2015; and (2) Plaintiff has not become disabled again since that date.

### A. The ALJ did not err in assessing Plaintiff's RFC when he concluded that Plaintiff's headaches or migraines and fibromyalgia were non-severe.

Plaintiff first challenges the ALJ's step two finding that the Plaintiff's headaches or migraines and fibromyalgia were non-severe. (Pl.'s Mem at 9). Specifically, Plaintiff contends that the record contains ample evidence that establishes a severe impairment of fibromyalgia based on the 2010 American College of Rheumatology Criteria for the Classification of Fibromyalgia ("2010 ACR Criteria"), and that the ALJ erred in finding otherwise. (Pl.'s Mem at 11) (R. at 20.) Additionally, Plaintiff challenges the ALJ's determination that the migraines were non-severe and asserts that the ALJ did not discuss the accompanying vertigo. (Pl.'s Mem. at 15).

Defendant argues that the ALJ reasonably found that the record did not contain repeated manifestations of six fibromyalgia symptoms, signs, or co-conditions. *See* Defendants' Mot. For Summ. J. ("Def.'s Mem.") at 19, ECF 24.) Additionally, Defendant states that if there was an error it would not require remand because the ALJ considered Plaintiff's fibromyalgia when determining the RFC and found that Plaintiff had other severe impairments that satisfied the step two requirement. (Def.'s Mem. at 19-21.) In response to how the ALJ evaluated Plaintiff's migraines and accompanying vertigo, Defendant contends that the ALJ reasonably found that the headaches and vestibular migraines were not of a frequency or duration to cause more than a minimal impact on Plaintiff's ability to do work. (Def.'s Mem. at 24.)

At step two, the ALJ must consider the claimant's medically determinable impairments. 20 C.F.R. §§ § 404.1594(f)(2), 404.1520(a)(4)(ii), 404.1521, 416.920(a)(4)(ii), 416.921. "The Supreme Court has held that this step of the disability evaluation is a *de minimis* threshold." *Williams v. Astrue*, 2010 WL 395631, at *14 (E.D. Va. Feb. 2, 2010), report and recommendation adopted, at *1 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987)).

An ALJ satisfies step two by finding a severe impairment and proceeding through the rest of the sequential analysis. *See McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 858 (11th Cir. 2015); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two."). Plaintiff has the burden of demonstrating that she has an "impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *Bowen*, 482 U.S. at 146. The claimant's impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509, 416.909.

A severe impairment causes more than a minimal effect on one's ability to function. *See* §§ 404.1520(c), 416.920(c). Likewise, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [one's] physical or mental ability to do basic work activities." §§ 404.1522(a), 416.922(a). An ALJ will find a claimant not disabled at step two if she "do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement." §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

### 1. The ALJ did not err in finding Plaintiff's headaches or migraines are non-severe.

Plaintiff contends that the ALJ did not consider "the number and quality of complaints of vertigo shown in the medical record" which support Plaintiff's claim that her vestibular migraines are a severe impairment. (Pl.'s Mem. at 13-14, 13n.6.) In support, Plaintiff points to nineteen instances in which she reported her vestibular migraines to her medical providers. (Pl. Mem. at 13-14, and 13n.6.) Plaintiff argues that the ALJ failed to address the extent to which vertigo interfered with Plaintiff's ability to work. (*Id.* at 15-16.)

Defendant responds that substantial evidence supports the ALJ's decision because Plaintiff sought limited treatment for her headaches. (Def.'s Mem. at 23.) Additionally, Defendant contends that the ALJ reviewed and cited to nearly all of the medical records regarding the actual treatment of Plaintiff's headaches. (Def.'s Mem. at 23.) Further, Defendant argues that the ALJ's omission of the word "vertigo" after his step two finding does not indicate that the ALJ conflated Plaintiff's headaches and migraines; in fact, the ALJ acknowledged that Plaintiff was diagnosed with vestibular migraines and related dizziness. (Def. Mem. at 22-24 citing R. 19-20 ("The claimant complained of dizziness in June 2015, which was related to vertigo or migraines.").)

When reviewing the findings of fact this Court must determine if substantial evidence exists in the record. To determine whether substantial evidence exists, the court must examine the record, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see also Biestek v. Berryhill*, 587 U.S. \_\_\_, at 7, 139 S.Ct. 1148, 1157 (2019) (holding that the substantial-evidence inquiry requires case-by-case consideration, with deference to the presiding ALJ's credibility determinations).

For the ALJ to determine that Plaintiff's headaches or vestibular migraines were not severe, the ALJ must find that the medical and other evidence within the record would have no more than a minimal impact on the Plaintiff's ability to work. As the fact finder in his report, the ALJ cited five instances in the record where Plaintiff treated for vestibular migraines and headaches. (R. at 19, *citing* R. 551-63, 585-86, 695, 722, 774.)

Plaintiff avers that the ALJ failed to consider the "numerous occasions" in Plaintiff's medical record that show her "complaining of, and being treated for, vestibular migraines." (Pl.'s Mem. at 13.) In support, Plaintiff listed nineteen visits to various medical providers and contends that the ALJ erred in accounting for only five of them. (Pl.'s Mem. at 13n.6, 15). However, a closer inspection of Plaintiff's nineteen citations to the record reveals a substantial number merely list vestibular migraines, with Plaintiff's other conditions, as an active problem for Plaintiff but omits any data indicating that she complained of or treated for them during each visit.

Merely listing vestibular migraines as Plaintiff's current condition does not entitle a claimant to disability benefits; "[t]here must be a showing of related functional loss." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). A review of these records indicates that thirteen of the nineteen cited records merely state vestibular migraines as a current active problem without including substantive information on whether Plaintiff treated for them at those visits. (*See* R. at 446 (12/2/13); 593 (5/28/15); 603, 608 (4/17/15); 736 (7/21/16); 713 (8/1/2016); 774 (1/15/2018); 833 (314/2019); 869, 913 (4/9/2019); 885 (5/7/2019); 888-89 (5/8/2019).) Three of the cited records reference Plaintiff's past history of migraines without describing a present treatment plan. (*See* R. at 440 (10/20/14); 596 (5/28/15); 761 (10/24/2017).) In total, sixteen of the nineteen cited documents, totaling twelve visits, do not indicate the frequency or duration of Plaintiff's vestibular migraines, nor do they discuss Plaintiff's treatment regarding migraines.

In contrast, the ALJ's decision cites to instances in which Plaintiff treated for her headaches and migraines. (R. at 19-20.) Plaintiff treated for vertigo on June 29, 2015 and reported headaches, dizziness, and migraines. (R. at 582, 585-86.) On August 26, 2015, Plaintiff treated again for headaches, dizziness, and vertigo and was subsequently diagnosed with vestibular migraines. (R. at 560, 563.) The ALJ cited to both the June 29, 2015 and August 26, 2015 visits in his decision and noted that Plaintiff continued to report intermittent dizziness and lightheadedness. (R. at 19, 695.) However, the ALJ also referenced records indicating that Plaintiff's headaches were decreasing in frequency by June 2016 and December 2017, with the latter appointment detailing the frequency of her headaches to every other day. (R. at 19-20, 695, 774.) The ALJ noted that Plaintiff denied migraines when she visited the neurosurgeon in September 2016. (R. at 19, 722.) The ALJ concluded that Plaintiff's headaches and migraines did not occur at a frequency or to a duration "that would cause more than a minimal limitation in her ability to perform basic work activity." (R. at 20.)

This Court reviews the ALJ's decision with deference to the presiding ALJ's credibility determinations when a substantial evidence inquiry arises. *See Biestek*, 587 U.S. ___, at 7 (2019). As there is substantial evidence in the record to support the ALJ's decision, this Court finds that the ALJ did not err in finding that Plaintiff's headaches or migraines were non-severe.

### 2. *The ALJ did not err in finding Plaintiff's fibromyalgia was non-severe.*

Plaintiff argues that the ALJ erred in determining that Plaintiff's fibromyalgia was non-severe on the basis that other contributory or underlying diseases were not excluded, nor were there repeated manifestations of six or more fibromyalgia symptoms, co-occurring conditions, or signs. (Pl.'s Mem. at 10.) Defendant argues that the ALJ did not err because he reasonably found that other conditions had not been excluded. Further, Defendant contends that it is insufficient to

state only that Plaintiff was diagnosed with fibromyalgia for it to be considered a severe impairment. (Def.'s Mem. at 19-20, *citing* SSR 12-2p, 2012 WL 3104869 (July 25, 2012) ("SSR 12-2p") ("We cannot rely upon the physician's diagnosis alone."); (R. 20-25, 728, 827-28, 859, 893, 904.).)

SSR 12-2p provides guidance on how the SSA determines whether a person has a medically determinable impairment of fibromyalgia and how to evaluate fibromyalgia in disability claims pursuant to Title II and XVI of the Act. *See* SSR 12-2p at *2. To establish that an applicant has a medically determinable impairment of fibromyalgia, the applicant must provide evidence from an accepted medical source and meet one of two sets of criteria for diagnosing fibromyalgia, specifically the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia ("1990 ACR Criteria") or the 2010 ACR Criteria. *See id*.

The 1990 ACR Criteria considers a person to have an medically determinable impairment of fibromyalgia if she has all three of the following: (1) a history of widespread pain that has persisted (or that persisted) for at least three months; (2) at least eleven positive tender points on physical examination found bilaterally and both above and below the waist; and (3) evidence that other disorders that could cause the symptoms or signs were excluded. The 2010 ACR Criteria requires: (1) a history of widespread pain that has persisted (or that persisted) for at least three months; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) evidence that other disorders could cause these repeated manifestations were excluded. *Id.* at *3.

In this case, the ALJ found that "[t]here is no indication in the record that other contributory or underlying diseases have been excluded, and/or repeated manifestations of six or more

fibromyalgia symptoms, signs, or co-conditions. Therefore, the record is inadequate to establish a severe impairment of fibromyalgia." (R. at 20.) Plaintiff contends that the records show that she was diagnosed with fibromyalgia, has a history of widespread pain, is easily fatigued, has poor sleep, has cognitive defects, depression, anxiety, bouts of dizziness/vertigo, and chronic pain. (Pl.'s Mem. at 11.) Plaintiff also argues that the record contains evidence of objective pain and points to an exam in April 2019 which identified seven tender points throughout her body. (Pl.'s Mem. at 9-10.)

The ALJ concluded that the record contained "no indication" that other "contributory or underlying diseases have been excluded, and/or repeated manifestations of six or more fibromyalgia symptoms, signs or co-occurring conditions." (R. at 20.) Despite this finding, the ALJ accounted for Plaintiff's symptoms by limiting her to the sedentary exertional level with a sit/stand option at the workplace, as well as off-task limitations and absence of up to twenty-three days per year. (R. at 20.)

This Court finds that the ALJ did not err in making this determination. First, the record shows that Plaintiff's fibromyalgia symptoms and signs appear to coincide with her diagnosis of degenerative disc disease, foraminal stenosis, lumbar radiculopathy, and trochanteric bursitis, all of which were accounted for in the ALJ's decision. (R. at 20, 882.) Those diagnoses are types of chronic pain impacting Plaintiff's neck (foraminal stenosis), low back (lumbar radiculopathy), hip (trochanteric bursitis), and general back area (degenerative disc disease). The record also suggests that Plaintiff's obesity was a contributing factor in her mild to moderate neural foraminal narrowing and bulging discs. (R. at 824.) (detailing a December 4, 2018, visit at which Plaintiff's neurosurgeon noted that her BMI of 41 "clearly is not helping" her neck and back pain.)

13

Plaintiff's fatigue, irritability, anxiety, and depression also coincide with her September 2017 diagnosis of PTSD. (R. at 773.) In November 2017, a mental health therapist noted that Plaintiff's PTSD symptoms created "deficits in her ability to establish and maintain a productive daily routine" and made it difficult for Plaintiff to complete household chores and perform well at work "due to decreased motivation, lack of energy, difficulty concentrating, and memory loss." (R. at 26, 767.) Medical records from a December 2017 visit to Piedmont Psychiatric Center indicate Plaintiff's anxiety and depression are related to her past trauma and ongoing feelings of instability in her current living situation. (R. at 775.) The record contains substantial evidence that other contributory or underlying conditions may exist which have not been ruled out. Therefore, the ALJ did not err in his determination that Plaintiff's fibromyalgia was a non-severe impairment because the record supports his reasoning that other conditions were not excluded.

    **B.    The ALJ did not err when he assessed Plaintiff's RFC because he adequately explained how the RFC accounted for Plaintiff's concentration, persistence, and pace limitations.**

Plaintiff argues that the ALJ erred in his determination of Plaintiff's RFC because the ALJ failed to adequately account for the severity of the Plaintiff's concentration, persistence, and pace limitations. (Pl.'s Mem. at 6.) Additionally, Plaintiff contends that *Mascio* prohibits the ALJ from accounting for Plaintiff's concentration, persistence, and pace limitations by restricting her simple, routine tasks or unskilled work. (Pl. Mem. at 6-7.) Defendant responds that the ALJ's established RFC restrictions are supported by the record and adequately explained by the ALJ after considering Plaintiff's statements, activities, and the objective evidence. (Def.'s Mem. at 26-27.) Defendant distinguishes the present case from *Mascio* by arguing that the ALJ went beyond merely limiting Plaintiff to simple, routine work, but included several limitations aimed at accommodating Plaintiff's mental impairments and limitations. (Def.'s Mem. at 26.)

After step three, the ALJ must determine the Plaintiff's RFC. 20 C.F.R. §§ 404.1520(a)-(f), 404.1545(a)(1). RFC "is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *Mascio*, 780 F.3d at 635 (quoting 20 C.F.R. § 416.929(a)(1)). An ALJ first assesses the nature and extent of the claimant's physical and mental abilities and limitations and then determines the claimant's RFC for work activity on a regular and continuing basis. §§ 404.1545(b), 416.945(b). The RFC must incorporate impairments supported by the objective medical evidence in the record and those based on the claimant's credible complaints. §§ 404.1545(e), 416.945(e). The ALJ must conduct a function-by-function analysis in assessing a claimant's RFC, and remand may be appropriate in cases where the ALJ fails to assess a claimant's capacity to perform relevant functions or where the ALJ's analysis contains inadequacies that frustrate meaningful review. *Mascio*, 780 F.3d at 635-36. The assessment must include a narrative discussion of how the evidence supports each conclusion, citing specific medical facts and non-medical evidence, including daily activities and observations. SSR 96-8p, 1996 WL 374184 (July 2, 1996).

In *Mascio*, the Fourth Circuit held that remand was required because (1) the ALJ did not conduct a function-by-function analysis when the facts of the case required it; (2) the ALJ ignored the claimant's moderate limitation in her ability to maintain her concentration, persistence or pace without sufficient explanation; and (3) the ALJ determined the claimant's RFC before assessing her credibility. 780 F.3d at 633. Unlike the ALJ in *Mascio*, the ALJ in this matter assessed the credibility of the evidence prior to determining the Plaintiff's RFC and gave sufficient explanations for the moderate limitation on Plaintiff's ability to maintain concentration, persistence, and pace. (R. at 18-19 (discussing the psychological records of the Plaintiff.).) Additionally, the ALJ assessed numerous limitations and did not merely limit the Plaintiff to routine work.

15

For a court to meaningfully review an ALJ's RFC assessment, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion." *Mascio*, 780 F.3d at 636 (quoting SSR 96-8R, 1996 WL 374184 (July 2, 1996)). Thus, the ALJ must "identify evidence that supports his conclusion," and "build an accurate and logical bridge from the evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). If these steps are not taken, the court is "left to guess about how the ALJ arrived at his conclusion []" and renders it unable to adequately and meaningfully review the ALJ's conclusions. *Mascio*, 780 F.3d at 637.

In this case, the ALJ adequately identified the relevant evidence, and explained that the limitations of the Plaintiff's complaints/neurocognitive disorder were considered and taken into account with the limitation of simple routine tasks. (R. at 27.) First, at step three, the ALJ found that Plaintiff experienced moderate limitations in understanding, remembering, or applying information; mild limitations interacting with others; and moderate limitations on maintaining concentration, persistence, and pace. (R. at 21.) The ALJ then explained his RFC assessment. The ALJ considered Plaintiff's mental and physical impairments and their impact on the Plaintiff's ability to work. (R. at 22-28.) The ALJ gave a detailed discussion regarding Plaintiff's mental limitations (R. at 21-27 (citing R. 49-50, 99-102, 394-401, 540-42, 554, 613-19, 672-74, 684-86, 711-18, 745, 749-65, 767, 773-75, 817-22).)

The ALJ weighed the credibility of the evidence by examining the records, Plaintiff's testimony, and Plaintiff's other activities and found that Plaintiff was not as limited as alleged. (R. 22-27.) Thus, the ALJ did not err when addressing Plaintiff's concentration, persistence, and pace because the ALJ adequately articulated Plaintiff's mental and physical impairments and their impact on Plaintiff's ability to work.

### C. The ALJ did not err at step two of the *Craig* analysis because the ALJ's evaluation of step one does not control his findings at step two.

Plaintiff argues that the ALJ erred when he determined that Plaintiff's treatment records do not support her allegations regarding the severity of her limitations. (Pl.'s Mem. at 11.) Specifically, Plaintiff contends that the ALJ's analysis is contradictory because he determined at step one that Plaintiff had a medical impairment which could reasonably be expected to produce the pain or other symptoms but dismissed objective evidence of its severity. (R. at 26.) (Pl.'s Mem. at 11.) Defendant argues that the ALJ's finding that Plaintiff has an impairment that is "reasonably likely" to cause the symptoms alleged does not necessitate a finding that the intensity and persistence of the symptoms are also to the intensity and persistence alleged. (Def.'s Mem. at 31.)

In *Craig v. Chater*, the Fourth Circuit established a two-step process for determining whether a claimant is disabled by pain or other symptoms. 76 F.3d 585 (4th Cir. 1996). Under the *Craig* two-step analysis, an ALJ must first determine if Plaintiff has a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. § 404.1529(b); 76 F.3d at 594. If the claimant meets this threshold, the ALJ must determine the intensity and persistence of the claimant's pain or other symptoms, and the extent to which it affects her ability to work. 20 C.F.R. § 404.1529(b); *Craig*, 76 F.3d at 595. The ALJ's evaluation of a claimant's subjective complaints is afforded great deference. *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005).

In this case, the ALJ did not err when he determined that the record did not contain objective evidence to support the extent of Plaintiff's limitations. Federal regulations require the ALJ to consider "objective medical evidence" in determining whether the claimant is disabled at step two. *See* 20 C.F.R. § 404.1529(c)(2). Contrary to Plaintiff's argument, "*Craig* does not mandate that objective medical evidence cut in Plaintiff's favor at step two simply because the

17

ALJ made a favorable finding at step one." *Laws v. Astrue*, No. 3:08CV722, 2009 WL 3270770, at *8-9 (E.D.Va. Oct. 8, 2009) (finding an ALJ did not contradict his step one finding when he considered objective medical evidence, Plaintiff's statements about her pain and any other evidence relevant to the severity of the impairment at step two.)

The ALJ's finding at step one does not control his evaluation of the objective evidence with regards to the intensity and persistence of Plaintiff's pain and the extent to which it affects her ability to work. *Id*. Therefore, the ALJ did not err when he determined that Plaintiff did not pass step two of the *Craig* analysis.

## V. CONCLUSION

Based on the foregoing analysis, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 20) and Motion to Remand (ECF No. 21) be DENIED; that Defendant's Motion for Summary Judgment (ECF No. 24) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to Senior United States District Judge Henry E. Hudson and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                    /s/ MRC
                                                    Mark R. Colombell
                                                    United States Magistrate Judge

Richmond, Virginia
Date: <u>August 12, 2021</u>